1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2    Including Professional Corporations
   JAMES M. CHADWICK, Cal. Bar No. 157114
3  jchadwick@sheppardmullin.com
   HAROLD J. MILSTEIN, Cal. Bar No. 145074
4  hmilstein@sheppardmullin.com
   THAYER M. PREECE, Cal. Bar No. 241824
5  tpreece@sheppardmullin.com
   990 Marsh Road
6  Menlo Park, California  94025
   Telephone:   650-815-2600
7  Facsimile:    650-815-2601

8  Attorneys for Plaintiff
   ALIGN TECHNOLOGY, INC.
9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13
                                          CV 10-  5040
14  ALIGN TECHNOLOGY, INC., a                              SC
   Delaware corporation,            Case No. CV
15
                  Plaintiff,        **COMPLAINT FOR UNFAIR
16                                  COMPETITION AND FALSE
                                    ENDORSEMENT;  CONTRIBUTORY
17       v.                         TRADEMARK INFRINGEMENT;
                                    CYBERSQUATTING; AND
18  NOW MEDIA GROUP, INC., a California  INTENTIONAL INTERFERENCE
   corporation, JOHN CALDWELL, an  WITH CONTRACTUAL RELATIONS**
   individual,
19
                  Defendant.        **DEMAND FOR JURY TRIAL**
20

21
              Plaintiff Align Technology, Inc. ("Align") alleges the following:
22
                        **NATURE OF THE CASE**
23
              1.    This is an action seeking damages and injunctive relief for (1) unfair
24
   competition and false endorsement (15 U.S.C. §§ 1114(a), 1125(a)); (2) contributory
25
   trademark infringement (based on primary infringement under 15 U.S.C.
26
   §§ 1114(a), 1125(a)); (3) cybersquatting (15 U.S.C. § 1125(d)); and (4) intentional
27
   interference with contractual relations (California common law).
28

W02-WEST:5JMC1\403053013.1              -1-

1

## JURISDICTION AND VENUE

2      2.      The First, Second and Third Causes of Action arise under the Lanham

3   Act, 15 U.S.C. § 1051, *et seq.* This Court has original subject matter jurisdiction over

4   these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

5      3.      The Fourth Cause of Action arises under California common law.

6   This Court has supplemental jurisdiction of that Cause of Action pursuant to 28 U.S.C.

7   § 1367(a) because it is part of the same case or controversy as the First, Second, and Third

8   Causes of Action.

9      4.      Venue is proper in this judicial district pursuant to 28 U.S.C.

10   § 1391(b) because a substantial part of the events or omissions giving rise to the claims

11   asserted herein occurred or had effects in this district.

12      5.      Assignment to the San Jose Division of the Court is proper

13   pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or

14   omissions which give rise to the claims alleged occurred in Santa Clara County,

15   California.

16

## THE PARTIES

17      6.      Align is a Delaware corporation with a place of business at 2560

18   Orchard Parkway, San Jose, California 95131. Align owns and uses the famous

19   INVISALIGN trademark (the "INVISALIGN Trademark") in connection with its well-

20   known Invisalign® dental and orthodontic goods and services.

21      7.      On information and belief, Defendant Now Media Group, Inc. ("Now

22   Media") is a California corporation with a place of business at 6640 Lusk Boulevard

23   #A204B, San Diego, California 92121. On information and belief, Now Media provides

24   marketing and Internet services.

25      8.      On information and belief, Defendant John Caldwell is an individual

26   doing business at 6640 Lusk Blvd. #A204B, San Diego, California 92121.

27      9.      On information and belief, each of the above-named Defendants is,

28   and at all relevant times was, the agent, joint venturer, co-conspirator, and/or alter ego of

W02-WEST:5JMC1\403053013.1          -2-

1  each of its or their co-Defendants, and in committing the acts alleged herein, was acting

2  within the scope of said agency, and/or joint venture, and with the knowledge,

3  acquiescence or subsequent ratification of the above-named co-Defendants.  Moreover, on

4  information and belief, there is, and at all relevant times was, such a unity of interest and

5  comingling of funds between and among Defendants such that there is, and at all relevant

6  times was, no separateness between or among them such that each is, and at all relevant

7  times was, the alter ego of the other.  Recognition of the fiction of a separate existence

8  between and among them would sanction fraud and result in inequity to Align.

9  **FACTUAL BACKGROUND**

10  **Align's Business And Marks**

11      10.     Align is a pioneer in the field of orthodontics, designing,

12  manufacturing, and marketing the INVISALIGN® system, which consists of a

13  combination of proprietary 3D modeling software, cutting edge custom manufacturing

14  technology, and clear, removable appliances that are used to straighten teeth, either as

15  comprehensive orthodontic treatment or as a component of cosmetic dental work.

16      11.     Align works with doctors, dentists, and orthodontists around the

17  world.  Align has trained more than 62,000 doctors in its technology, started over 1 million

18  patients in treatment, and manufactured more than 63 million unique INVISALIGN

19  aligners.

20      12.     Align provides information on its products and services, and a portal

21  with tools for its authorized doctors at the domain name and website <invisalign.com>.

22      13.     Align began using the INVISALIGN Trademark in interstate

23  commerce in connection with its dental apparatus no later than September 1999.  Align has

24  continuously used the INVISALIGN Trademark in interstate commerce in connection with

25  its products and services since that time.

26      14.     Align owns the following United States trademark registrations:

27

28

| **Mark** | **Registration No.** | **Registration Date:** |
|----------|---------------------|------------------------|
| INVISALIGN | 2,409,473 | November 28, 2000 |
| INVISALIGN | 3,060,471 | February 21, 2006 |
| INVISALIGN | 3,191,195 | January 2, 2007 |
| INVISALIGN | 3,418,121 | April 29, 2008 |
| INVISALIGN TEEN | 3,627,894 | May 26, 2009 |
| INVISALIGN TEEN | 3,661,970 | July 28, 2009 |
| INVISALIGN ASSIST | 3,734,867 | January 5, 2010 |

True and correct copies of Align's INVISALIGN United States trademark registrations are attached as Exhibit A to this complaint.

15.     The INVISALIGN Trademark is fanciful and therefore inherently distinctive.  Moreover, as a consequence of the widespread marketing and use of the INVISALIGN technology, the INVISALIGN Trademark has become famous in connection with Align's goods and services, and Align enjoys significant resulting good will.  The INVISALIGN Trademark had acquired this fame by the time Defendant Now Media registered its first domain name using the INVISALIGN Trademark.

**Align's Licensing Contracts**

16.     Align works with individual dentists and orthodontists to provide INVISALIGN services through the dentists' and orthodontists' individual practices.

17.     Every dentist or orthodontist who is authorized to provide INVISALIGN products must enter into Align's license agreement, which incorporates Align's Art and Advertising Standards (collectively the "License Agreement").  True and correct copies of the License Agreement and the incorporated Art and Advertising Standards are attached as Exhibit B to this complaint.

18.     The Align Art and Advertising Standards ("Standards"), to which all authorized dentists and orthodontists must agree in order to offer INVISALIGN products, include provisions outlining the ways in which each licensee may and may not use the INVISALIGN Trademark.  The Standards prohibit the use of the INVISALIGN

1  Trademark in any domain name without the express permission of Align.  Thus, the

2  License Agreement to which all authorized licensees are a party expressly prohibits the use

3  of any domain name that incorporates the INVISALIGN Trademark without Align's

4  express permission.

5  **Defendants' Wrongful Acts Re Align's Trademarks**

6         19.    Defendants have built their marketing business based on the strength

7  and brand-recognition of Align's INVISALIGN Trademark.

8         20.    Defendants target doctors who are licensed to provide INVISALIGN

9  services in order to persuade those doctors to purchase services that violate the terms of the

10  License Agreement to which the doctors are a party.

11         21.    Defendants are engaged in a pattern of behavior that includes

12  registering domain names including the INVISALIGN mark, approaching doctors who are

13  authorized INVISALIGN providers, offering a domain name including the INVISALIGN

14  Trademark (either from Defendants' domain holdings or a new registration), using that

15  domain to attract and redirect Internet users to the doctors' websites, building websites for

16  the doctors that feature the INVISALIGN Trademark and logos, and charging the doctor

17  ongoing maintenance fees to build, administer and maintain the domain name and website.

18         22.    Defendants offer to Align's licensed doctors a service that Defendants

19  call an "Invisalign 'Infomercial Style' marketing website."  In connection with this service,

20  Defendants offer use of a domain name that incorporates the INVISALIGN Trademark,

21  creation of a website, and various web optimization marketing services.  Defendants

22  charge a one time fee of $3,250 for this service, followed by a $90 per month

23  "maintenance fee" to administer and maintain the domain name and website.  A true and

24  correct copy of an information and pricing sheet offered by Defendants as of August 6,

25  2010 is attached as Exhibit C to this complaint.

26         23.    In addition to approaching Align's licensed doctors in order to induce

27  those doctors to violate the Licensing Agreement with Align, Align is informed and

28  believes that Defendants have held themselves out as working in association with Align by

1  "partnering with Invisalign for a National Campaign."  These statements caused at least
2  one instance of actual confusion among Align's customers as to the sponsorship or
3  affiliation of Defendants' services with Align.

4       24.    Defendants have never been authorized to use the INVISALIGN
5  Trademark, and have never been granted authority to assert or suggest any affiliation with
6  or endorsement by Align.  Defendants' request for authority to do so was expressly refused
7  by Align.  Align has never worked or partnered with Defendants in any capacity, and in
8  particular has never worked with Defendants in connection with its Invisalign products or
9  the marketing of those products.

10      25.    During the course of their business, Defendants have registered at
11 least 21 domain names containing the INVISALIGN Trademark (collectively the
12 "Invisalign Domain Names"), including, but not limited to:

| **Domain Name** | **Registration Date** |
| --- | --- |
| 14  <invisaligndentistphiladelphiapa.com> | June 10, 2009 |
| 15  <invisalignorthodontistphoenix.com> (expired) | June 15, 2009 |
| 16  <invisalignorthodontistscottsdale.com> (expired) | June 15, 2009 |
| 17  <nvisalignbeverlyhillsca.com> | August 3, 2010 |
| 18  <invisaligndentistrichmond.com> | April 1, 2009 |
| 19  <invisaligndentistscottsdale.com> | April 1, 2009 |
| 20  <invisaligndentistbronx.com> | June 2, 2009 |
| 21  <invisalignmelbourne.com> | August 3, 2010 |
| 22  <invisalignorthodontistwichita.com> | July 9, 2009 |
| 23  <invisalignwichita.com> | July 9, 2009 |
| 24  <invisalignlebanonpa.com> (transferred) | July 14, 2010 |
| 25  <invisaligndentistwichita.com> | July 9, 2009 |
| 26  <invisaligndentistwashingtondc.com> | April 7, 2009 |
| 27  <invisalignbeverlyhillsca.com> | August 6, 2010 |
| 28  <invisalignsyracuse.com> | May 27, 2010 |

| | |
|---|---|
| <invisalignclearbraceslumineerstoronto.com> | August 3, 2010 |
| <invisalignanaheimca.com> (transferred) | March 25, 2010 |
| <invisalignbaltimoremd.com> | September 23, 2010 |
| <invisaligndentistmanhattan.com> (transferred) | June 2, 2009 |
| <invisalignmichigan.com> | September 30, 2010 |
| <invsisaligndentistbronx.com> (transferred) | June 2, 2009 |
| <invisaligndentistdallas.com> | April 6, 2009 |
| <invisaligndentistfremont.com> | April 28, 2009 |
| <houstoninvisaligndentist.com> | May 28, 2009 |
| <invisaligndentistmonmouthcounty.com> | May 22, 2009 |
| <invisalign-dentist-miami.com> | May 22, 2009 |
| <invisaligndentistsanfrancisco.com> | May 19, 2009 |
| <invisalignsurreybc.com> | October 22, 2010 |
| <invisalignvancouverbc.com> | October 22, 2010 |

True and correct copies of the WHOIS records for the known Invisalign Domain Names are included as Exhibit D to this complaint.

26.    While Defendants focus on Invisalign licensees for their marketing services, Defendants have also engaged in a pattern of registering the trademarks of others as domain names as shown by these domain names also owned by Defendants:

| **Domain Name** | **Registration Date** |
|---|---|
| <lumineerspeabody.com> | October 30, 2009 |
| <lumineers-stlouis.com> | February 22, 2010 |
| <lumineerslebanonpa.com> | June 10, 2010 |
| <thefacebookfanpagegenerator.com> | February 27, 2010 |
| <juvederm-sandiego.com> | October 16, 2009 |

These domains incorporate U.S. Trademark Registration Nos. 3,463,915 and 3,706,974 for JUVEDERM, Nos. 3,000,428, 3,099,348, 3,050,052, and 3,176,884 for LUMINEERS, and Nos. 3,734,637, 3,814,888, 3,716,926, 3,801,147, 3,041,791, 3,122,052, 3,659,516, and

3,826,546 for FACEBOOK.  True and correct copies of WHOIS entries for these domain names and United States Patent and Trademark Office records for these registrations are attached as Exhibit E to this complaint.

27.   Defendants registered numerous domain names containing the INVISALIGN Trademark with the intention of selling use of the domains to doctors who offer INVISALIGN services.

28.   Defendants typically retain ownership of the INVISALIGN domain names, build websites for their clients based around the INVISALIGN services, then redirect the INVISALIGN domain names to those websites.

29.   The registration of the Invisalign Domain Names violates the License Agreement and terms of use, to which Defendants' clients are parties.  Often the websites designed and created by Defendants for use by Invisalign providers are also in violation of the License Agreement.

30.   After receiving payment from their clients to register or dedicate pre-registered INVISALIGN domain names and build websites focused on the INVISALIGN services, Defendants then charge their clients an ongoing maintenance fee for the administration and maintenance of those domain names and websites.

31.   Defendants' use of the INVISALIGN Trademark in the domain names they have registered is confusingly similar to Align's INVISALIGN Trademark and the domain name used by the INVISALIGN Website, <invisalign.com>.  In particular, the use of the INVISALIGN Trademark together with a locational modifier falsely suggests sponsorship or endorsement by Align, thus creating confusion.

32.   After Defendants register or dedicate pre-registered Invisalign Domain Names for use by Align's licensed doctors, the domain names direct or redirect Internet users to websites designed by Defendants and advertising various dental and orthodontic services.  True and correct copies of websites created by Defendants and located at Defendants' Invisalign Domain Names are attached as Exhibit F to this complaint.

33.    Align has received numerous complaints from its licensees who are properly following Align's Standards. These complaints concern Defendants' clients' violation of the Standards, the appearance of sponsorship or endorsement by Align that the domains suggest, and the economic advantage that is being received by Defendants' clients. Defendants' actions are therefore harming Align's relationship with its customers.

**Defendants' Correspondence with Align**

34.    On April 15, 2009, Align sent a cease and desist letter to Defendants, alerting Defendants to Align's trademark rights, and of Defendants' violations of the Lanham Act as a result of their registration of domain names containing the INVISALIGN Trademark. A true and correct copy of this letter is attached as Exhibit G to this complaint.

35.    On April 16, 2009, Align sent to Defendants a copy of the Standards applicable to all of its authorized trademark licensees. A true and correct copy of these Standards is attached as Exhibit H to this complaint.

36.    Every authorized INVISALIGN licensee with whom Defendants have done business has agreed to the License Agreement and the Standards.

37.    Between July 14, 2009 and October 2, 2009, Align and counsel for Defendants exchanged a number of letters discussing the merits of the claims raised by Align's cease and desist letter.

38.    On October 9, 2009, counsel for Defendants sent a letter to Align stating that Defendants would (1) "cease and desist from registering domain names incorporating the INVISALIGN trademark, or any confusingly similar variation thereof; and (2) Within 30 days, [Defendants] will disable, or otherwise takedown, the websites corresponding to domain names in [Defendants'] possession and incorporating the INVISALIGN trademark." A true and correct copy of this letter is attached as Exhibit I to this complaint.

39.    After Defendants' letter of October 9, 2009, however, Defendants did not disable the websites as promised. Defendants also continued in their pattern of bad

1  faith conduct by registering additional domain names containing the INVISALIGN

2  Trademark.  At least nine of the Invisalign Domain Names registered by Defendants and

3  listed above were registered after the October 9, 2009 letter.

4      40.    Align sent Defendants letters on November 16, 2009 and February 2,

5  2010 regarding Defendants' violation of the terms to which it had agreed.  On February 4,

6  2010, an Align representative spoke with Defendant Caldwell regarding the domain names

7  and websites in dispute.  In that conversation, Defendant Caldwell stated that all of the

8  Invisalign Domain Names owned by Defendants would be allowed to expire by June 30,

9  2010.

10     41.    Defendants did not allow the domain names to expire as agreed, but

11  instead continued using the domains and registered additional domain names containing

12  the INVISALIGN Trademark.

13     42.    At least as recently as September 30, 2010, Defendants have

14  registered a domain name containing the INVISALIGN Trademark, in direct violation of

15  their written and verbal agreements with Align, and in violation of Align's trademark

16  rights.

17     43.    As of the filing of this complaint, Defendants have not ceased

18  registering domain names containing the INVISALIGN Trademark, nor have Defendants

19  disabled any of the websites they maintain in connection with those domain names.

20                    **FIRST CAUSE OF ACTION**

21            **(Unfair Competition, 15 U.S.C. §§ 1114(a), 1125(a))**

22     44.    Align incorporates herein the allegations in paragraphs 1 through 43,

23  as set forth above.

24     45.    Align is the sole owner of the registered INVISALIGN Trademark, as

25  set forth above.

26     46.    Align has never licensed or otherwise authorized Defendants to use

27  the INVISALIGN Trademark in any manner.  Align has never licensed or otherwise

28  authorized Defendants to assert or imply any endorsement by or affiliation with Align.

1    47.    Defendants are registering, using, charging fees for the use of, and

2  collecting ongoing revenue based on the use of domain names containing the

3  INVISALIGN Trademark, as well as website design and administration services focused

4  on the INVISALIGN Trademark, without permission from Align, despite Align's

5  objections and Defendants' promises to cease.

6    48.    Defendants' ongoing registration, use and collection of revenue from

7  the use of the INVISALIGN Trademark and domain names containing that mark, in

8  interstate and international commerce, implies false endorsement of Defendants' services

9  by Align, in violation of 15 U.S.C. § 1125(a).  Defendants' actions create confusion among

10  consumers, including Align's customers, by falsely suggesting and creating the belief that

11  Defendants' products and services are sponsored, authorized, approved by, or otherwise

12  connected with Align, and are of the same quality as that assured by Align's INVISALIGN

13  Trademark.

14    49.    Many of the domain names registered by Defendants contain Align's

15  INVISALIGN Trademark plus a geographical indicator.  Defendants' use and sale of these

16  geographic domain names creates an impression of regional exclusivity for the doctors to

17  whom Defendants have sold the domains, and causes mistaken belief among consumers,

18  including Align's customers, that this apparent regional exclusivity is sponsored,

19  authorized, or approved by Align, which is false.

20    50.    On information and belief, Defendants' use of the INVISALIGN

21  Trademark in connection with their domain names and website design and administration

22  services, in interstate and international commerce, is likely to cause consumers, including

23  Align's customers, to mistakenly believe that Align has approved, sponsored or authorized

24  doctors who use Defendants' services as its exclusive regional providers.

25    51.    On information and belief, Defendants have willfully and

26  intentionally registered, used, and sold domain names that are identical or confusingly

27  similar to Align's INVISALIGN Trademark, and used the INVISALIGN Trademark in

28  connection with their web design and administration services, with the intent of causing

1 | confusion and mistake and of misleading and deceiving the public generally and Align's

2 | customers in particular into generally believing that Defendants' services are associated

3 | with or approved by Align.

4 |       52.    Although Defendants have included on websites created for clients

5 | language disclaiming affiliation with Align, this putative disclaimer does not dispel the

6 | confusion created by Defendants' use of the INVISALIGN Trademark in the Invisalign

7 | Domain Names and throughout the websites themselves.  First, the putative disclaimer is

8 | not even displayed to a consumer until after the consumer has already been attracted and

9 | directed to the website.  Second, the disclaimer is not prominent, and is outweighed by the

10 | use of the INVISALIGN Trademark in the Invisalign Domain Names and the websites.

11 | Third, it disclaims only "affiliation" with Align, and not the suggestions of sponsorship,

12 | endorsement, or approval of regional exclusivity by Align created by Defendants' use of

13 | the INVISALIGN Trademark in the Invisalign Domain Names and the websites.

14 |       53.    On information and belief, as a direct and proximate result of

15 | Defendants' unlawful acts as set forth above, including the unauthorized use of the

16 | INVISALIGN Trademark, Defendants have earned and continue to earn substantial

17 | revenues and profits from their provision and use of domain names and websites that

18 | include the INVISALIGN Trademark.

19 |       54.    As a direct and proximate result of Defendants' unlawful acts as set

20 | forth above, including unauthorized use of the INVISALIGN Trademark and the false

21 | impressions created by Defendants' actions, Align has suffered and will continue to suffer

22 | injury to its business, goodwill, and property.

23 |       55.    Align is entitled to recover from Defendants the damages that it has

24 | sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein.

25 | Align is further entitled to recover from Defendants the gains, profits and advantages that

26 | Defendants have obtained as a result of the wrongful conduct alleged herein.  Align is at

27 | present unable to ascertain the full extent of its damages, or the gains, profits, and

28 |

1  advantages that Defendants have obtained by reason of the wrongful conduct described

2  herein, but those amounts will be proven at trial.

3       56.    Align is further entitled to an award of enhanced damages and

4  attorneys' fees pursuant to 15 U.S.C. § 1117.

5       57.    Align has no adequate remedy at law to compel Defendants to cease

6  their wrongful acts.  Unless Defendants are preliminarily and permanently enjoined from

7  committing these unlawful acts as set forth above, including the unauthorized use of

8  Align's INVISALIGN Trademark, Align will continue to suffer irreparable harm.

9       58.    Align is entitled to an injunction pursuant to 15 U.S.C. § 1116

10  restraining Defendants and their officers, agents, servants and employees, and all persons

11  in active concert or participation with them from engaging in any further such acts of

12  unfair competition in violation of 15 U.S.C. § 1125.

13                        **SECOND CAUSE OF ACTION**

14                     **(Contributory Trademark Infringement)**

15       59.    Align incorporates herein the allegations in paragraphs 1 through 58,

16  as set forth above.

17       60.    Defendants' clients are parties to a contract with Align governing

18  their use of the INVISALIGN Trademark.  By purchasing rights to use domain names

19  from Defendants that contain the INVISALIGN Trademark, Defendants' clients are in

20  direct violation of the License Agreement to which they are parties.

21       61.    Use of the INVISALIGN Trademark by doctors providing Align's

22  INVISALIGN products and services is only authorized so long as it complies with the

23  terms of the License Agreement to which the doctors are a party.  Any use of the

24  INVISALIGN Trademark that does not comply with the terms of the license is

25  unauthorized.

26       62.    Any registration of a domain name containing the INVISALIGN

27  Trademark is unauthorized, unless individually reviewed and approved by Align.

28

1    63.    None of the Invisalign Domain Names registered by Defendants, nor
2  the websites posted at those domains, were authorized by Align.

3    64.    On information and belief, the use of domain names containing the
4  INVISALIGN Trademark by Defendants' clients, often combined with geographical
5  indicators, creates a mistaken belief among consumers, including Align's customers, that
6  those domain names were registered and the associated websites are provided with the
7  approval or sponsorship of Align.  The use of the domain names with geographical
8  indicators also creates a false impression that the doctors using the domain names are
9  exclusive regional providers sponsored, endorsed or authorized by Align.  All of these
10  false impressions are likely to cause confusion among the consuming public generally and
11  Align's customers in particular as to the approval, sponsorship, or endorsement of these
12  domain names and websites by Align, to Align's detriment.

13    65.    Defendants have known since at least as early as April 16, 2009 that
14  Defendants' clients are not permitted to register or use domain names containing the
15  INVISALIGN Trademark under the terms of the License Agreement to which the clients
16  are parties, and that any use of the trademark in a domain name is unauthorized.

17    66.    Despite Defendants' knowledge that such use would be in violation of
18  the License Agreement to which their clients are a party, Defendants have intentionally
19  induced Align's customers to commit trademark infringement by using these domain
20  names in violation of the clients' licensing agreements.

21    67.    Despite Defendants' knowledge that their clients are violating the
22  License Agreement with Align by using domain names from Defendants that contain the
23  INVISALIGN Trademark, and that such use constitutes trademark infringement,
24  Defendants have continued to provide their domain name registration and website design
25  and maintenance services to these clients.

26    68.    On information and belief, as a direct and proximate result of
27  Defendants' unlawful acts as set forth above, including the inducement to infringe and
28  continued provision of services that infringe Align's trademarks, Defendants have earned

1 and continue to earn substantial revenues and profits from their provision and use of

2 domain names containing the INVISALIGN Trademark and from website design and

3 maintenance services incorporating the INVISALIGN Trademark.

4     69.    As a direct and proximate result of Defendants' unlawful acts as set

5 forth above, Align has suffered and will continue to suffer injury to its business, goodwill,

6 and property.

7     70.    Align is entitled to recover from Defendants the damages that it has

8 sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein.

9 Align is further entitled to recover from Defendants the gains, profits and advantages that

10 Defendants have obtained as a result of the wrongful conduct alleged herein.  Align is at

11 present unable to ascertain the full extent of its damages, or the gains, profits, and

12 advantages that Defendants have obtained by reason of the wrongful conduct described

13 herein, but those amounts will be proven at trial.

14     71.    Align is entitled to an injunction pursuant to 15 U.S.C. § 1116

15 restraining Defendants and their officers, agents, servants and employees, and all persons

16 in active concert or participation with them from engaging in any further such acts that

17 induce or enable their clients to commit acts of unfair competition in violation of 15

18 U.S.C. §§ 1114 and 1125.

19                    **THIRD CAUSE OF ACTION**

20     **(Violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))**

21     72.    Align incorporates herein the allegations in paragraphs 1 through 71,

22 as set forth above.

23     73.    The INVISALIGN Trademark is fanciful and therefore inherently

24 distinctive.  Moreover, as a consequence of the widespread use of the INVISALIGN

25 Trademark, consumers associate the INVISALIGN Trademark with innovative orthodontic

26 and dental devices, and Align enjoys significant resulting fame and good will.  The

27 INVISALIGN Trademark had acquired this fame by the time Defendants registered their

28 first domain name using Align's INVISALIGN Trademark.

74.   Defendants registered multiple domain names, with the knowledge that the domain names were identical or confusingly similar to Align's INVISALIGN Trademark. Defendants have continued to maintain and use Invisalign Domain Names despite their knowledge that the domain names are identical or confusingly similar to Align's INVISALIGN Trademark, and in breach of their express promise to cease doing so. Defendants have engaged in this conduct in bad faith.

75.   Defendants registered numerous domain names containing the INVISALIGN Trademark with the intent of reselling the domain names or use of the domain names to third parties at a profit. Defendants actively solicited third parties to pay for the use of the Invisalign Domain Names they registered, for financial gain.

76.   Defendants have continued to maintain and use the Invisalign Domain Names they registered for financial gain, despite their knowledge that the domain names are identical or confusingly similar to Align's INVISALIGN Trademark, and in breach of their express promise to cease doing so.

77.   On information and belief, Defendants have actively misled Align's customers into believing that they are affiliated with Align, in order to induce Align's customers to pay for Defendants' services, including the registration and maintenance of the Invisalign Domain Names, and have done so despite their knowledge that the domain names are identical or confusingly similar to Align's INVISALIGN Trademark.

78.   Defendants have engaged in a pattern of registering domain names containing trademarks to which they have no rights, for the purpose of selling those domains or the use of those domains to third parties.

79.   Defendants have made no bona fide offering of their own services through the Invisalign Domain Names. Nor have Defendants made any bona fide noncommercial or fair use of the Invisalign Domain Names.

80.   Defendants are, and at all relevant times have been, knowingly using the INVISALIGN Trademark in connection with their domain name and website service.

1  Defendants sought and continue to seek to profit from the unauthorized use of the

2  INVISALIGN Trademark.

3        81.   As a direct and proximate result of Defendants' acts alleged herein,

4  Align has been and continues to be injured in its business and property, and has sustained

5  and will continue to sustain substantial damage to its business, goodwill, and reputation in

6  an amount not presently known.

7        82.   Align is entitled to the maximum statutory damages, pursuant to 15

8  U.S.C. § 1117(d), in the amount of $100,000, for each act of Defendants' cybersquatting.

9  Defendants have engaged in not less than 21 (twenty one) acts of cybersquatting, by

10  registering and opening websites at no less than 21 (twenty one) domains that are identical

11  or confusingly similar to the INVISALIGN Trademark and website, and are therefore

12  liable for not less than $2,100,000.

13        83.   Align has no adequate remedy at law.  Unless Defendants are

14  preliminary and permanently enjoined from committing these unlawful acts as set forth

15  above, and the Invisalign Domain Names owned by Defendants are ordered transferred to

16  Align, Align will continue to suffer irreparable harm.  Align is therefore entitled to

17  injuctive relief against the continued use of the domains registered by Defendants.

18        84.   Align is entitled to the transfer of Defendants' domain names that bear

19  the INVISALIGN Trademark under 15 U.S.C. § 1125(d)(1)(C).

20                                     **FOURTH CAUSE OF ACTION**

21             **(Intentional Interference with Contractual Relations)**

22        85.   Align incorporates herein the allegations in paragraphs 1 through 84,

23  as set forth above.

24        86.   Every doctor who is authorized to use the INVISALIGN system has

25  entered into a contract with Align governing the use of the INVISALIGN system and

26  Trademark, and providing economic benefits and advantages to Align.

27        87.   The contracts to which each Invisalign-authorized doctor is a party

28  provide that the doctor may not use any domain name containing the INVISALIGN

1  Trademark without the prior approval of Align.  The contracts also specify specific

2  manners in which the INVISALIGN Trademark and logos may be used by the doctor.

3       88.     Defendants knew of the existence of these contracts and their terms

4  concerning domain name registration and trademark use, and knew that the doctors to

5  whom they have provided and are providing services are not authorized to request or use

6  domains including the INVISALIGN Trademark.

7       89.     By encouraging the Invisalign-authorized doctors to register and/or

8  use, redirect, or assume ownership of domain names containing the INVISALIGN

9  Trademark in violation of the terms of these contracts, Defendants have intentionally

10  engaged in activities intended to interfere with and disrupt the performance of these

11  contracts.

12       90.     Defendants' conduct has resulted in the breach of these contracts by

13  each doctor who has purchased and/or used a domain name containing the INVISALIGN

14  Trademark from Defendants.

15       91.     As a result of Defendants' wrongful conduct, Align has been harmed

16  and has incurred damages in an amount not presently known but to be proven at trial.

17                              **PRAYER FOR RELIEF**

18       Align requests the following relief as a result of the unlawful acts of

19  Defendants described herein:

20       A.     A Judgment in favor of Align on all of the claims for relief pleaded

21  herein.

22       B.     That Defendants, and all persons and entities acting in concert with

23  them, be preliminarily and thereafter permanently enjoined and restrained, pursuant to the

24  Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116 and Cal. Civ. Code

25  § 3426.2, from using in any manner in connection with Defendants' Websites, domain

26  names, or the services or goods offered or sold by Defendants, or in connection with any

27  advertising or promotions for such businesses, services, or goods, the INVISALIGN

28  Trademark and any domain name containing the INVISALIGN Trademark;

1           C.     An Order requiring Defendants, and all persons and entities acting in

2    concert with them, to cease using any domain name containing the INVISALIGN

3    Trademark, and to transfer ownership of those domain names to Align;

4           D.     That Defendants, and all persons and entities acting in concert with

5    them, be preliminarily and thereafter permanently enjoined and restrained from registering

6    any domain names containing the INVISALIGN Trademark in the future;

7           E.     An award to Align of compensatory and consequential damages

8    flowing from Defendants' wrongful acts, as described herein.

9           F.     An Order requiring Defendants to disgorge any and all revenues,

10   gains, profits, and advantages obtained and to be obtained by Defendants as a result of

11   Defendants' unlawful acts as described herein.

12          G.     An Order finding that this case is exceptional and awarding enhanced

13   damages and attorney's fees pursuant to 15 U.S.C. §1117(a).

14          H.     An Order that Align recover its costs from Defendants.

15          I.     An Order awarding Align prejudgment and postjudgment interest.

16          J.     An Order for such other and further relief as the Court may deem just

17   and appropriate.

18   Dated:  November 8, 2010       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

19

20

                         By _____

21                                   JAMES M. CHADWICK

22                                   HAROLD J. MILSTEIN

                                THAYER M. PREECE

23                                   Attorneys for Plaintiff

24                                   ALIGN TECHNOLOGY, INC.

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2    Plaintiff Align Technology, Inc. hereby demands a jury trial on all issues

3 triable as of right to a jury.  Fed. R. Civ. P. 38(b).

4 Dated:  November 8, 2010  SHEPPARD MULLIN RICHTER & HAMPTON LLP

5

6

7      By _____

8         JAMES M. CHADWICK
         HAROLD J. MILSTEIN
9         THAYER M. PREECE
         Attorneys for Plaintiff
10        ALIGN TECHNOLOGY, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28